DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Erie County Court of Common Pleas, Juvenile Division, which found appellant Thomas B. to be a juvenile traffic offender for violating R.C. 4511.20, reckless operation. Thomas B. now appeals, raising the following assignments of error:
 "I. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION TO SUPPRESS.
 "II. THE TRIAL COURT ERRED IN ISSUING A VERDICT THAT WAS NOT SUPPORTED BY THE GREATER WEIGHT OF THE EVIDENCE.
 "III. THE TRIAL COURT ERRED IN REFUSING TO ACCEPT APPELLANT AS AN EXPERT WITNESS.
 "IV. THE TRIAL COURT ERRED BY BEING BIASED AGAINST APPELLANT.
 "V. THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT UNDER A STATUTE THAT WAS NOT IN EFFECT AT THE TIME OF THE ARREST.
 "VI. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION TO DISMISS."
On March 16, 1998, at approximately 4:30 p.m., appellant was cited for reckless operation of a motor vehicle in violation of R.C. 4511.20 after Sergeant John Majoy of the Huron Police Department witnessed him turn right from Cleveland Road West onto Williams Street in Huron, Erie County, Ohio. Subsequently, appellant filed a motion to suppress all evidence in the traffic stop arguing that there was no probable cause for the stop. Appellant also requested an evidentiary hearing on the motion. The court denied the motion and denied the request for an evidentiary hearing, finding, pursuant to Juv.R. 22(D), that the motion to suppress could not be heard without adjudication of the merits of the case. Thereafter, appellant was tried and adjudicated to be a juvenile traffic offender for the reckless operation of a motor vehicle in violation of R.C. 4511.20. In a February 4, 1999 order of disposition, appellant was ordered to pay a fine of $15 plus court costs of $50, his driver's license was suspended for one hundred twenty days with work privileges, and he was ordered to attend a driver modification course. Appellant appealed that judgment to this court challenging, among other things, the trial court's refusal to grant him a hearing on his motion to suppress.
In a decision and judgment entry of March 24, 2000, we reversed the trial court's judgment and found that the trial court had erred in failing to grant appellant an evidentiary hearing on his motion to suppress. We therefore remanded the case to the trial court for further proceedings consistent with our decision.
On May 3, 2000, appellant filed in the court below a motion to dismiss the charge against him. Appellant asserted that because he had already complied with the license suspension and paid the fine and court costs, any further prosecution of the matter would violate the prohibition against double jeopardy. On May 19, 2000, the trial court held a hearing on the motions to dismiss and to suppress. Initially, addressing the motion to dismiss, the court heard oral arguments and concluded that appellant's rights against double jeopardy were not violated by the readjudication of his case. The court then proceeded to hear testimony with regard to the motion to suppress. On June 16, 2000, the case proceeded to an adjudicatory hearing.
On September 12, 2000, the lower court issued a magistrate's decision denying the motions to suppress and dismiss. In reaching those conclusions, the court made the following findings of fact:
 "1) On May 26, 1998 Thomas [B.]'s legal counsel filed a motion to suppress all evidence in the traffic stop of the accused on the basis that there was no probable cause to stop or detain Thomas.
 "2) A Motion [sic] to dismiss was also filed by the youth's legal counsel arguing that further prosecution of the case in this matter constituted double jeopardy.
 "3) The case had been adjudicated and dispositional orders had been filed prior to a remand of the action back to the trial court due to an error in not holding an evidentiary hearing on the youth's motion to suppress.
 "4) Officer John Majoy of the Huron Police Department testified that he was on duty, in uniform and parked in a marked police vehicle in the parking lot of a business at the corner of Cleveland Road and Williams Street in Huron, Ohio on the 16th day of March, 1998. His police vehicle was backed into the parking lot facing Williams Street in an eastbound position.
 "5) Officer Majoy was speaking to a pedestrian acquaintance who was standing between him and the intersection of Williams Street and Cleveland Road West when the officer heard tires squealing and immediately after saw a black Mustang automobile traveling eastbound on Cleveland Road West turn southbound onto Williams Street heading South. The officer first saw the vehicle when it was approximately 50 feet away from him.
"6) Williams Street is a two-lane street.
 "7) Officer Majoy had witnessed many drivers execute the turn taken by Thomas on that day without entering into the oncoming traffic lane on Williams Street.
 "8) The black Mustang's convertible top was down and officer Majoy could see all the occupants in the vehicle. The occupants of the car consisted of a driver, a front seat passenger and a back seat passenger.
 "9) Officer Majoy testified that he observed the vehicle's back end travel at least two to three feet over the `center line' and `one-half of a vehicle width across the center of the road.'
 "10) Officer Majoy witnessed all the occupants of the vehicle lean at an angle during the turn and then abruptly become upright when the vehicle reentered completely the right lane of traffic.
 "11) Officer Majoy acknowledged that there was no marked centerline on Williams Street at the time that the citation was issued.
 "12) Officer Majoy testified that there were no other cars on the road at the time that he observed the vehicle make the turn.
 "13) The pedestrian that Officer Majoy had been talking to was situated approximately 15 feet away from Thomas [B.]'s vehicle as it passed her in completing its turn.
 "14) Officer Majoy testified that he stopped the black Mustang vehicle and identified its driver as Thomas [B.], the youth that is the subject of this action.
 "15) Officer Majoy issued a citation to Thomas [B.] for reckless operation.
"16) Thomas [B.] was born on the 26th of June 1982."
Also on September 12, 2000, the lower court magistrate issued a decision finding appellant to be a juvenile traffic offender for violating R.C. 4511.20. That conclusion was based on the following findings of fact which the court expressly made:
 "1) Officer John Majoy of the Huron Police Department testified that he was on duty, in uniform and parked in a marked police vehicle in the parking lot of a business at the southwest corner of Cleveland Road and Williams Street in Huron, Ohio on the 16th day of March, 1998 at approximately 4:30 P.M. His police vehicle was parked in a parking space facing east to Williams Street.
 "2) Officer Majoy is a nine and one-half year veteran of the Huron Police Department and currently holds the rank of Sergeant.
 "3) Officer Majoy was speaking to a pedestrian acquaintance standing between him and the intersection of Williams Street and Cleveland Road West when the sound of acceleration of a vehicle engine got his attention. The officer testified that a driver has to be accelerating his vehicle to make the sound that Officer Majoy heard. Officer Majoy saw a black Mustang automobile traveling eastbound on Cleveland Road West turn Southbound onto Williams Street. The tires of the vehicle were screeching as it made the turn. As the vehicle turned onto Williams Street the car fishtailed extending the rear of the vehicle left of center into the oncoming lane of traffic two to three feet.
 "4) Williams Street is a two-lane street open to the public. The street has a public sidewalk.
 "5) Defendant's exhibits A through C show that the street has a fire hydrant, and telephone pole in the tree lawn in the vicinity of the intersection. The buildings shown in the exhibits are located in close proximity to the street.
 "6) Officer Majoy described fishtailing as when the wheels of a vehicle are turning to one side the rear tires slide out sideways in the opposite direction to the way the vehicle is turning.
 "7) Officer Majoy testified that there would have been a collision if there had been a vehicle in the northbound lane of Williams Street at the intersection when the Mustang made its turn.
 "8) Officer Majoy testified that he has never seen anyone make the turn in the manner the Mustang did that day. Officer Majoy testified that the turn was executed in wanton disregard for the safely [sic] of the driver his [sic] passengers and pedestrians.
 "9) Officer Majoy testified that the speed in which the vehicle was making the turn combined with the sliding out of the back tires in a fishtail subjected the driver to a serious risk of loss of control of the vehicle.
 "10) The black Mustang's convertible top was down and Officer Majoy could see all the occupants in the vehicle. The occupants of the car consisted of a driver, a front seat passenger and a back seat passenger.
 "11) Officer Majoy testified that after fishtailing the Mustang jerked back into the right lane of traffic. The thrust of the vehicle caused all the occupants of the car to simultaneously lean their torsos at an angle and then abruptly straighten up when the vehicle came back fully into the right hand lane.
 "12) Officer Majoy acknowledged that there was no marked centerline on Williams Street at the time that the citation was issued.
 "13) Officer Majoy testified that there were no other cars on the road at the time that he observed the vehicle make the turn.
 "14) Officer Majoy testified that the Mustang was taking the turn too fast though he acknowledged that it was not traveling in excess of the speed limits posted for Cleveland Road of 35 miles an hour or Williams Street at 25 miles an hour.
 "15) Officer Majoy testified that a safe speed to make the turn is approximately 15 to 20 miles per hour.
 "16) Officer Majoy testified that the Mustang's tires squealed from going sideways on the pavement while making the turn.
 "17) Officer Majoy testified that the black Mustang vehicle stopped approximately 50 to 75 feet from the intersection. Thomas [B.] was identified as the driver of the vehicle.
 "18) Thomas [B.] testified that he stopped his vehicle at the home of his friend, one of the passengers, to drop him off from school. Thomas [B.] testified that his passenger's house is located three driveways down from the intersection of Cleveland Road West and Williams Road. He did not know that the officer was intending to stop him when he pulled his vehicle over to let his friend out.
 "19) Officer Majoy approached the vehicle and issued a citation to Thomas [B.] for reckless operation.
"20) Thomas [B.] was born on the 26th of January 1982.
 "21) Thomas [B.] described the route he took from the school parking lot to his final stop at his friend's house on Williams Street where officer Majoy issued him a citation. The route consisted of intervals of turns and one to two block straight-aways. He turned onto Cleveland Road West one block before he turned onto Williams Street.
 "22) Thomas [B.] testified that the tires of his auto did squeal when he made the turn but not due to acceleration. He stated they `always' do that when he turns.
 "23) Thomas testified that he did not know the turn was shaped the way it was and `I thought I could take it at the 25 miles per hour posted speed for Williams Street.'
 "24) Thomas [B.] denied that the car fishtailed. He asserted that the car shifted on its chassis because of the 25 mile per hour speed that he was taking the turn. He did not believe he went into the northbound lane of traffic at all."
On September 22, 2000, appellant filed objections to the magistrate's decisions on the motions to suppress and dismiss and on the adjudication. Appellant further requested additional time to file the transcript of the proceedings before the magistrate. The lower court granted appellant's motion for additional time to file the transcript but did not specify when the transcript was to be filed. Subsequently, on October 25, 2000, the trial court filed a judgment entry adopting the magistrate's decisions on the motions to suppress and dismiss and on the adjudication. After adopting the magistrate's decisions, the court found that appellant had satisfied the dispositional orders previously rendered and, accordingly, no additional dispositional order was rendered. It is from that judgment that appellant now appeals.
We will first address the sixth assignment of error in which appellant challenges the trial court's denial of his motion to dismiss. Appellant asserts that because he had satisfied the dispositional order of February 4, 1999, by serving a one hundred twenty day license suspension and paying a fine and costs of $65, any further adjudication of this case violated his right against double jeopardy.
It is a well-established principle of constitutional jurisprudence that "a successful appeal of a conviction precludes a subsequent plea of double jeopardy." United States v. Scott (1978), 437 U.S. 82, 89. More specifically, the Supreme Court of Ohio held in State v. Liberatore
(1982), 69 Ohio St.2d 583, at paragraph two of the syllabus, that:
 "Retrial for the same offense after reversal of a prior conviction on appeal does not constitute a violation of the constitutional provision prohibiting double jeopardy. A reversal of a judgment in a criminal case merely places the state and the defendant in the same position as they were in before trial."
Finally, it is noteworthy that in the present case, while appellant was tried a second time, no new dispositional order was rendered by the court below and, as such, he was not "punished" a second time. Accordingly, the trial court did not err in denying the motion to dismiss and the sixth assignment of error is not well-taken.
We will now address the portion of the fourth assignment of error that challenges the trial court's dismissal of his objections to the magistrate's decisions.
Ten days after the lower court magistrate issued decisions on appellant's motion to suppress and motion to dismiss and adjudicating appellant a juvenile traffic offender, appellant filed objections to those decisions. The objections challenged the trial court's rulings on the motions to suppress and to dismiss, challenged the court's conclusion that appellant was a juvenile traffic offender, and asserted that the magistrate erred in making numerous evidentiary rulings. The objections did not challenge any findings of fact made by the magistrate. Regarding the challenge to the magistrate's evidentiary rulings, appellant stated that a transcript of the proceedings was necessary to develop this argument further. Accordingly, appellant also filed a motion for further time to file transcripts of the proceedings and requested an additional fourteen days after the filing of the transcripts to file further objections. In granting appellant's request for further time, the trial court did not specify when the transcripts were to be filed. Nevertheless, on October 25, 2000, forty-three days after the magistrate issued its decisions, the court filed its judgment entry adopting those orders and finding that those decisions were well founded both in fact and in law. The court further found that the magistrate's decisions contained sufficient findings of fact upon which the court could rule. In addition, the court found that appellant had not to date availed himself of the extension granted. As such, the court concluded that "a reasonable period of time has elapsed, during which the youth had an opportunity to render his filings, and that by virtue of his having failed to do so he has waived his rights in that regard." Appellant now contends that the trial court's dismissal of his objections demonstrated the court's bias against him and violated his right to due process.
Despite appellant's assertion, the court did not "dismiss" his objections. Indeed, the court expressly stated that it had reviewed the magistrate's decision and appellant's objections thereto. The court then denied appellant the opportunity to support his objections with the transcript or to file additional objections. Civ.R. 53(E)(3) governs the procedure for filing objections to a magistrate's decision. Under paragraph (a) of the rule, a party is granted fourteen days after the filing of the magistrate's decision to file written objections thereto. Paragraph (b) then provides:
 "Objections shall be specific and state with particularity the grounds of objection. * * * Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule."
Accordingly, only objections to findings of fact are to be supported by a transcript of the evidence submitted to the magistrate. Because appellant did not object to the magistrate's findings of fact, a transcript was not needed for the court to rule on appellant's objections. As to appellant's request for additional time to file additional objections, we note that forty-three days after the magistrate filed her decision, appellant had yet to file the transcript or additional objections. Although the better practice would have been for the court to specify a date by which the transcript was due, we cannot say that the trial court abused its discretion in finding that a reasonable period of time had elapsed for the filing of the transcripts. Particularly given that the transcript from the hearing on the motions to suppress and dismiss was only forty-two pages long and the transcript from the adjudicatory hearing was eighty-eight pages long.
Accordingly, the trial court did not demonstrate any bias toward appellant in adopting the magistrate's decision before appellant filed the transcripts or additional objections and that portion of the fourth assignment of error is not well-taken.
In light of this conclusion, we find that the following discussion is necessary before further addressing the assignments of error. An appellate court is precluded from considering a transcript of a magistrate's hearing when the parties failed to provide the transcript to the trial court upon the filing of objections to the magistrate's decision. State ex rel. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 730, citing High v. High (1993), 89 Ohio App.3d 424,427. The appellate court's review is thus limited to whether the trial court's application of the law to the magistrate's factual findings constituted an abuse of discretion. Id.
In his first assignment of error, appellant challenges the trial court's ruling on his motion to suppress. The trial court denied appellant's motion to suppress, finding that Officer Majoy's observation of appellant's traffic violation justified the investigatory stop.
In order to justify an investigatory stop of an automobile, a police officer must demonstrate specific and articulable facts which, when considered with the rational inferences therefrom, would justify a reasonable suspicion that the individual to be stopped may be involved in criminal activity, including a traffic law violation. See Delaware v.Prouse (1979), 440 U.S. 648, 663; Terry v. Ohio (1968), 392 U.S. 1; Statev. Bobo (1988), 37 Ohio St.3d 177; State v. Freeman (1980),64 Ohio St.2d 291. The Supreme Court of Ohio has determined that "[t]he propriety of an investigatory stop * * * must be viewed in light of the totality of the surrounding circumstances," Bobo, supra, paragraph one of the syllabus; Freeman, supra, paragraph one of the syllabus, and these circumstances are to be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. Freeman, supra, at 295.
In considering the question of a reasonable articulable suspicion to effectuate a traffic stop, this court has held that "`weaving, whether within or outside one's lane, is indicative of erratic driving which authorizes the police to stop a vehicle.'" State v. Purcell (Feb. 27, 1998), Erie App. No. E-97-056, unreported, quoting Village of Montpelierv. Lyon (May 1, 1987), Williams App. No. WM-86-16, unreported. Moreover, driving left of center is a violation of R.C. 4511.25. Officer Majoy testified that he witnessed appellant's vehicle fishtail and cross into the oncoming lane of traffic by several feet. Accordingly he was fully justified in stopping appellant's vehicle and the trial court did not err in denying appellant's motion to suppress. The first assignment of error is not well-taken.
We will next address the third and remaining portion of the fourth assignments of error together. Appellant asserts that the trial court erred in denying his request to testify as an expert witness and that the court's ruling on the request demonstrated the court's bias against appellant. Although we are precluded from reviewing the transcript of the adjudicatory hearing, we note that the parties agree that at that hearing, appellant's counsel sought to have appellant testify as an expert witness on driving around corners based on four specialized driving courses appellant had attended. In denying the request, the court determined that the testimony would be unreliable because appellant would be trying to educate the court on specific areas while at the same time having a vested interest in the case.
The admissibility of expert testimony is governed by Evid.R. 702 which reads:
 "A witness may testify as an expert if all of the following apply:
 "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 "(2) The design of the procedure, test, or experiment reliably implements the theory;
 "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
To qualify as an expert, a witness "must demonstrate some knowledge on the particular subject superior to that possessed by an ordinary juror."Scott v. Yates (1994), 71 Ohio St.3d 219, 221. Nevertheless, even if a witness is qualified to testify as an expert and the evidence is determined to be relevant, a court will find the testimony inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A). "A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion." Scott, supra at 221.
Upon review of this issue, we cannot find that the court abused its discretion in denying appellant's request to testify as an expert witness. Appellant was cited for reckless operation in violation of R.C. 4511.20. That statute provides that "[n]o person shall operate a vehicle * * * on any street or highway in willful or wanton disregard of the safety of persons or property." Accordingly, whether appellant turned the corner in a safe manner was a key issue before the trial court. Under these circumstances, the court did not act unreasonably or demonstrate bias in concluding that appellant's testimony as an expert on this issue may not be reliable.
The third and fourth assignments of error are therefore not well-taken.
In his second assignment of error, appellant asserts that the lower court's adjudication of him as a juvenile traffic offender was against the manifest weight of the evidence. In reviewing this assignment of error, we note, as explained above, that because the transcript of the adjudicatory hearing is not properly before us, we are limited to determining whether the lower court's application of the law to the magistrate's factual findings constituted an abuse of discretion. SeeVistula Mgt. Co. v. Newson (1997), 120 Ohio App.3d 500, 503.
R.C. 2151.02.1 defines a juvenile traffic offender as "[a] child who violates any traffic law, traffic ordinance, or traffic regulation of this state * * *." Appellant was found to have violated R.C. 4511.20, which prohibits the operation of a vehicle "on any street or highway in willful or wanton disregard of the safety of persons or property." The Supreme Court of Ohio has concluded that the terms "willful" and "wanton" "are substantially similar in wording and effectively identical in meaning." State v. Earlenbaugh (1985), 18 Ohio St.3d 19, 22, fn. 2. The court in Earlenbaugh further equated wantonness with recklessness. R.C.2901.22(C) defines recklessness as follows:
 "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
The lower court magistrate found that by turning right from Cleveland Road West onto Williams Street while driving twenty-five miles per hour, and thereby causing his car to fishtail into the oncoming lane of travel and causing the occupants of the car to swerve, appellant was wanton in his disregard for the safety of himself, his passengers and the pedestrian who was standing near Officer Majoy's patrol vehicle. In light of the law as set forth above, we cannot say that the lower court abused its discretion in adopting the magistrate's decision. Accordingly, the second assignment of error is not well-taken.
Finally, in his fifth assignment of error, appellant asserts that the trial court erred in sentencing him pursuant to R.C. 4507.162(A)(3), which he contends was not in effect when appellant was issued the citation. That statute, however, is not a sentencing statute. Rather, it directs the registrar of motor vehicles to suspend the probationary driver's license of an individual when that individual has been adjudicated in juvenile court of having twice violated any of the traffic laws enumerated in the statute before his or her eighteenth birthday. There is nothing in the record before this court to indicate that the lower court "sentenced" appellant pursuant to this statute. R.C. 2151.356
addresses the disposition of juvenile traffic offenders and reads in pertinent part:
 "(A) Unless division (C) of this section applies, if a child is adjudicated a juvenile traffic offender, the court may make any of the following orders of disposition:
 "(1) Impose a fine and costs in accordance with the schedule set forth in section 2151.3512 [2151.35.12] of the Revised Code;
 "(2) Suspend the child's probationary operator's license or the registration of all motor vehicles registered in the name of the child for the period that the court prescribes[.]"
Accordingly, the lower court's dispositional order in the present case was fully authorized by the applicable law. The fifth assignment of error is not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Erie County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Melvin L. Resnick, J., and Mark L.Pietrykowski, P.J., CONCUR.