THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE, *v.*
LIBERATORE, APPELLEE AND CROSS-APPELLANT.

[Cite as State v. Liberatore (1982), 69 Ohio St. 2d 583.]

(No. 81-443—Decided February 26, 1982.)

584

Mr. John T. Corrigan, prosecuting attorney, and Mr. Carmen M. Marino, for appellant.

Gold, Rotatori & Swartz Co., L.P.A., Mr. Robert J. Rotatori and Ms. Susan L. Gragel, for appellee.

CLIFFORD F. BROWN, J.   This case presents four distinct issues for our determination:

(I) Was the trial court correct in permitting the use of a prior unrecorded statement to refresh Mata's recollection;

(II) Was the testimony of FBI agent Riggio admissible for impeachment purposes;

(III) Did the prosecutor's repeated references during closing argument to evidence outside the record prejudice the defendant's rights to such an extent that reversal of his conviction is required; and,

(IV) Would retrial of the defendant constitute double jeopardy?

### I. Mata's testimony.

The state contends that the prior statement of Mata should be treated as substantive evidence under the co-conspirator exception to the hearsay rule. We reject this argument.

In Ohio, the declaration of a co-conspirator is not admis-

sible as an exception to the hearsay rule unless the declaration is made during the course of and in furtherance of the conspiracy or resulting coverup. *State* v. *Shelton* (1977), 51 Ohio St. 2d 68. Since the prior statement which implicated Liberatore was made to a person known by the declarant to be an FBI agent, such statement clearly cannot be said to have been made in furtherance of or during the pendency of the conspiracy or cover-up.

Furthermore, there are no guarantees of trustworthiness presented which would allow the admission of such evidence under the statement against interest exception to the hearsay rule. Mata relayed Liberatore's alleged involvement in the arson in an effort to be accepted into the Witness Protection Program. To be so considered, Mata was required to confess all prior criminal activities. As such, the statement he proffered to FBI agent Riggio was not against his interest, but *for* his interest.

Even though Mata's statements to agent Riggio constitute inadmissible hearsay as evidence of the facts stated, the question remains whether such statements may be properly used as a device for refreshing the witness' recollection.

Under Ohio law as it existed at the time of this trial,[3] a party seeking to cross-examine its own witness concerning a prior inconsistent statement was required to show that he was surprised by the adverse testimony. See *State* v. *Diehl* (1981), 67 Ohio St. 2d 389, 390; *State* v. *Minneker* (1971), 27 Ohio St. 2d 155, 158; *State* v. *Duffy* (1938), 134 Ohio St. 16.

In the present case, the prosecution did not claim surprise. Not only had Mata previously denied under oath that he had made the statement to Riggio,[4] but Mata's attorney specifically informed the state that he would likewise do so at trial.

Even if the state could have legitimately claimed it was surprised by Mata's testimony, it was improper for the trial court to allow the extended questioning of Mata. As this court held in *State* v. *Dinsio* (1964), 176 Ohio St. 460:

" * * * [I]t is error prejudicial to the defendant for the

---

[3] Ohio has, in fact, retained the requirement of surprise in instances in which a party seeks to impeach its own witness. See Evid. R. 607, effective July 1, 1980.

[4] On May 30, 1979, Mata denied making the statement at a habeas corpus proceeding.

court to permit counsel for the state, by continued questioning of the witness, which questions go unanswered, to get before the jury innuendoes and inferences of facts, conditions, and circumstances which the state could not get before the jury by direct testimony of the witness."

Although *Dinsio* was predicated upon the witness' assertion of his Fifth Amendment right to remain silent, there is no reason to distinguish it from the present case. The underlying rationale still applies: It is improper for the state to attempt to prove its case by suggestion rather than evidence.

Through its questioning of Mata the prosecution placed before the jury the content of patently inadmissible evidence. The purpose of the examination was not to refresh the witness' recollection, but rather to encourage the jury to draw inferences from these questions. Such a prosecutorial tactic constitutes reversible error.

Finally, while limited incorporation of a witness' prior sworn statements within leading questions designed to refresh his recollection is permissible, we find no precedent sanctioning the recitation of extended unsworn and unrecorded remarks which inculpate the defendant.

We therefore hold that while the initial calling of an uncooperative witness to the stand may be proper, the prosecution is not permitted to put before the jury, under the guise of impeachment, an out of court statement of that witness, by reciting extended unsworn and unrecorded remarks which inculpate the defendant, when there is good reason to believe the witness will decline to testify as desired.

## II. *Riggio's testimony.*

Even if it had been proper for the state to question Mata in this manner, it is well settled law in Ohio that a party may not impeach its own witness through the testimony of another who then relates from memory the prior inconsistent statement.

In this regard, *State* v. *Minneker, supra,* paragraph two of the syllabus, is directly on point:

"A party is not permitted to attack the credibility of his own witness by attempting to prove a witness' extra judicial oral prior inconsistent statement through the testimony of another who was present when the statement was made and

who testified from memory as to the substance of the statements which were damaging to the accused."

Riggio's testimony added credibility to the prosecution's suggestion that Mata had made the prior inconsistent statement. Once again this inadmissible evidence was put before the jury. As in *Diehl, supra,* the reiteration of information contained in the questions propounded to the recanting witness was erroneously admitted. Unlike *Diehl,* the use of agent Riggio's testimony for impeachment purposes was sufficiently prejudicial to warrant reversal of the defendant's conviction in that it constituted the only actual evidence of Mata's alleged statement.[5] The emphasis on the content of this unsworn and unrecorded statement by Riggio's testimony increased the probability that the jury would consider the statement as substantive evidence, despite any limiting instruction to the contrary.[6] Accordingly, we hold that the trial court committed prejudicial error in admitting the testimony of agent Riggio.

### III. *Prosecutorial misconduct.*

Although the prosecution is entitled to a certain degree of latitude in summation, the prosecutorial blunders in this case are too extensive to be excused. Here we do not have simply a brief prosecutorial lapse, but a whole series of instances of misconduct. Indeed, the prosecution presented a textbook example of what a closing argument should not be.

Prosecutor Marino and, to some extent his co-counsel, repeatedly referred to Mata's oral statement as if it was substantive evidence;[7] commented at length on inferences to be drawn from facts not in evidence;[8] characterized the defen-

---

[5] The prior inconsistent statement was neither recorded nor made under oath.

[6] In fact, the court's instruction was also erroneous. The court instructed the jury that Mata's statement constituted a declaration made by a co-conspirator and was thus an exception to the hearsay rule. Such instruction was clearly inapplicable in view of the facts of this case.

[7] The overwhelming emphasis on the closing argument concerned Mata's oral statement to Riggio. The prosecution argued that Mata had told the truth when he stated he commited the arson at Liberatore's direction and that the latter paid him "$1,000 a piece" for those crimes. The court gave no specific cautionary instruction to disregard these improper arguments.

[8] The prosecution argued that Mata did not testify because the defendant had threatened his safety if he did so: " * * * [T]his defendant got to John Mata to keep

dant in derogatory terms clearly designed to inflame the jury;[9] and expressed personal opinions as to the credibility of the witness Mata[10] and the guilt of the accused.[11]

This thoroughly unprofessional conduct prejudiced the defendant's rights to such an extent as to require reversal.

## IV. *Double Jeopardy*

Defendant argues that since a mistrial should have been granted on the grounds of egregious prosecutorial misconduct, the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution precludes retrial. He suggests that retrial is equally unconstitutional in a case where a conviction is reversed on appeal as it would be in a case where a mistrial is declared at trial.

There is authority for the proposition that when a mistrial is declared as a result of "outrageous prosecutorial misconduct and overreaching" the Double Jeopardy Clause prohibits retrial of a criminal defendant. *Cf. United States* v. *Dinitz,*

---

him from testifying"; " * * * he is afraid of Mr. Liberatore"; and "If he wanted to stay with us in this life, folks, he knew what he had to do."

The record contains no evidence linking the defendant to any such threats and the innuendo was unfounded and unfair.

[9] Specifically, the prosecution argued the following:

"If you looked at that man Mata, he is a tough guy. A hard nosed goon is what he is. That is the type of individual that a man like Liberatore would hire to commit these types of violence."

" * * * We are dealing with thugs, goons, and when Mata testified there, and when Chester Liberatore sits there"; and " * * * Nobody in unions condone to this type of action. Burnings are what hoods do. Organized crime does burnings."

The Court of Appeals held that such remarks were not "so inflammatory as to arouse the passion and prejudice of the jury against the appellant." This court, however, finds it impossible to filter out the impact of these particular phrases in view of the highly objectionable nature of the entire closing argument. Accordingly, we hold that such remarks contribute to our conclusion that the prosecution engaged in improper conduct during closing argument.

[10] The prosecution stated unequivocally that Mata told the truth to Riggio, and commented upon his "silence of guilt."

[11] The record is replete with instances in which the prosecutor expressed his own personal opinion as to the guilt of the accused. The prosecutor based his opinion of guilt upon speculation that the defendant was the focus of an FBI investigation and on Mata's inadmissible statement made to FBI agent Riggio. Such statements of opinion have been emphatically denounced by this court—especially, as here when predicated on inferences based upon facts outside the evidence. See, *e.g., State* v. *Stephens* (1970), 24 Ohio St. 2d 76.

(1976), 424 U. S. 600. However, this court refuses to equate, for the purpose of invoking the Double Jeopardy Clause, a declaration of a mistrial to a reversal on appeal. As the United States Supreme Court stated in *United States* v. *Jorn* (1971), 400 U. S. 470, 484:

" * * * [T]he crucial difference between reprosecution after appeal by the defendant and reprosecution after a * * * mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury, and, perhaps, end the dispute then and there with an acquittal. * * * "

The mere fact that the prosecutorial misconduct which occurred could have been grounds for a mistrial does not negate this distinction. The errors were not made "in order to goad the * * * [defendant] into requesting a mistrial or to prejudice his prospects for an acquittal." *United States* v. *Dinitz, supra,* at 611. There is no conceivable reason why the prosecutor would deliberately engage in impermissible arguments simply for the purpose of having the convictions reversed, thereby allowing the defendant to be retried. Indeed, it is likely that no more evidence will be adduced at defendant's second trial than at his first.

Retrial for the same offense after reversal of a prior conviction on appeal does not constitute a violation of the constitutional provision prohibiting double jeopardy. See *Foran* v. *Maxwell* (1962), 173 Ohio St. 561, 563; *Sutcliffe* v. *State* (1849), 18 Ohio St. 469; *United States* v. *Smith* (C.A. 6, 1978), 584 F. 2d 759, 761, certiorari denied 441 U. S. 922. A reversal of a judgment in a criminal case merely places the state and the defendant in the same position as they were in before trial.

Accordingly, the judgment of the Court of Appeals is affirmed and the cause remanded for retrial.

*Judgment affirmed.*

CELEBREZZE, C. J., W. BROWN and Sweeney, JJ., concur.
LOCHER, HOLMES and KRUPANSKY, JJ., dissent.

HOLMES, J., dissenting. In my view, the showing of the prior inconsistent statement of the co-conspirator was properly allowed by way of the testimony of the FBI agent Riggio

here because the co-conspirator Mata was called as a witness by the state and cross-examined by the defense counsel. I am in agreement with Judge Stillman, who, in his dissent in the Court of Appeals, stated that the proper evidentiary principle would be that a prior inconsistent statement made by an accomplice may be excepted from the hearsay rule, and may be received as substantive evidence when the out-of-court asserter is present and available for cross-examination. Such determination may be supported upon two bases. Here, the co-conspirator Mata was not asserting his Fifth Amendment right to remain silent in that he had been previously convicted for his part in the arsons. Also, both the cross-examination of Riggio, as the testifying witness concerning the declarations of the co-conspirator, and the cross-examination of the declarant co-conspirator allow every opportunity for constitutional confrontation.

The trial court did not go so far as to allow Mata's out-of-court statement to be introduced as substantive evidence, but allowed it on the more limited basis for impeachment of the credibility of the co-conspirator Mata. There was other substantive evidence linking Mata with the defendant Liberatore. Mata took a copy of a hand-drawn map of the two arson sites, 9000 and 9001 Ivy Oval in North Royalton, from a desk drawer in his home and gave it to Riggio. Upon later fingerprint processing, the map not only revealed the fingerprint of Mata, but also the palmprint of the defendant Liberatore. This map reasonably was not accessible to anyone but the co-conspirators, as it came from within the desk of Mata. It was not a common item, but was distinctly peculiar to the incidents of the arson of the homes on Ivy Oval.

Mata also supplied Riggio with papers containing memoranda of various union locals and their telephone numbers, and the name of Chester Liberatore.

The jury had the duty to evaluate the credibility of the witnesses before it and to weigh the evidence presented. Here, after such evaluation and weighing, the jury reasonably found in favor of the state's case, and the Court of Appeals should not have overturned such verdict.

I am also in agreement with Judge Stillman's dissent that the commentary of the assistant prosecutor in closing argu-

ment was not reversible error. The assistant prosecutor was notably zealous in his closing argument, but reasonably could be considered as only expressing his opinion that the evidence showed the guilt of the defendant Liberatore. Obviously, this is but the expression of the position of the state in the trial of every criminal matter. Further, the trial court had given the usual admonition to the jury that the expressions of counsel in closing arguments are not to be considered as evidence.

Based on the foregoing, I would reverse the judgment of the Court of Appeals.

LOCHER, J., concurs in the foregoing dissenting opinion.