[Cite as *State v. Fether*, 2012-Ohio-892.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-00148 |
| JOHN WAYNE FETHER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal appeal from the Stark County
Court of Common Pleas, Case No.
2011CR0129

JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    March 5, 2012

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN FERRERO                      ANTHONY KOUKOUTAS
STARK COUNTY PROSECUTOR      116 Cleveland Avenue N.W.
BY: CHRYSSA HARTNETT         Suite 808
110 Central Plaza South           Canton, OH  44702
Canton, OH  44702

*Gwin, P.J.*

**{1}** Defendant-appellant John W. Fether appeals his convictions and sentences from the Stark County Court of Common Pleas for one count of Rape a felony of the first degree in violation of R.C. 2907.02(A)(1)(c) and one count of Sexual Battery a felony of the third degree in violation of 2907.03(A)(5). Plaintiff-appellee is the State of Ohio.

### STATEMENT OF THE CASE AND FACTS

**{2}** In 2010, Josephine Fether and appellant had been married for 22 years. The couple lived with Josephine's two adult children from a previous relationship, 25 year-old Marcus and 26 year-old Angela. Marcus' girlfriend Cassie also resided in the home.

**{3}** Angela was born with spinal meningitis and cerebral palsy. As a result, she is moderately mentally retarded and has physical limitations. She did not take her first steps until she was fifteen years old. Angela requires assistance to walk, bathe and dress. Mentally she functions at the level of a 10-year-old child. Angela spends her day on the sofa in front of the television which was always left on for her to watch.

**{4}** On January 17, 2011, Josephine, Marcus and Cassie left the home to do errands, leaving Angela and John at home. When they got back home, Josephine went into the house first followed by Marcus and then Cassie. Josephine immediately saw that Angela was not on her normal place on the sofa and that the television had been turned off. Alarmed because the television is never off, Josephine went straight to her bedroom looking for John. Marcus and Cassie followed.

{5}     When Josephine looked into the bedroom, she saw Angela lying on the bed with her pants pulled halfway down and her entire backside exposed. At the same time, she watched as appellant, naked from the waist down, rolled over and tried to cover his erect penis with a blanket. Shocked and enraged, Josephine ran into the room, grabbed appellant by the penis and punched him in the mouth. Josephine continued to pull on appellant's penis, screaming and asking him what he thought he was doing to her daughter. Appellant said nothing, but Angela became extremely distraught and began shaking and crying. Josephine ordered Marcus and Cassie to get Angela out of the room. Cassie helped Angela pull up her pants and then helped her walk to her bedroom.

{6}     Josephine called 911, got Angela into the car and drove to her sister Karen's house, just a block down the street. Cassie and Marcus followed in their vehicle. Karen, Cassie and Marcus took Angela inside while Josephine waited outside for the police. Angela was still very upset.

{7}     When their cruiser appeared on the street, Josephine flagged down Stark County Sheriff's deputies Gayles and Curry. Josephine was extremely upset, crying and agitated. She kept telling the deputies "he did something to my baby." Deputy Gales determined that Josephine was referring to her husband and that the victim was in the house. He and Deputy Curry then went inside to speak to Angela and had Josephine complete a written statement.

{8}     Deputy Curry spoke with Angela. She was very upset and concerned that Deputy Curry understood that she did not tell, but rather that "mom seen it." She told him that appellant pulled her pants down and "stuck his dick" inside her. Based on this

information, Deputy Curry instructed Josephine to take Angela to the hospital. In the meantime, the deputies went to the Fether home to talk with appellant.

{9} Josephine and Karen took Angela to Aultman Hospital where she was seen by sexual assault nurse examiner, Carolyn McCune. In describing what happened, Angela told McCune that appellant took her in his room, pulled her pants down, put his "dick" "down there" and "moved up and down on me." Angela indicated that appellant had done the same thing "lots of times."

{10} Nurse McCune conducted a physical examination, collected Angela's underwear and completed a rape kit which included a vaginal smear, and vaginal and perianal swabs. The rape kit was then sent to the Canton Stark County Crime Lab. Nurse McCune's physical exam revealed mild redness of Angela's cervix and some clear fluid in the cervical vault.

{11} Meanwhile, Marcus had let deputies Curry and Gales into the Fether home. They found appellant lying on his bed, fully clothed and sound asleep. Deputy Gales woke appellant up, asked that he accompany them to the sheriff's office. Appellant agreed.

{12} At the sheriff's department, appellant spoke with Deputy John Von Spiegel. Appellant denied the allegations but told Deputy Von Speigel that he had consumed a significant amount of alcohol that day. Appellant claimed he did not remember his wife grabbing his penis and trying to pull it off, nor allegedly did he recall her striking him. Appellant acknowledged that he was aware of Angela's mental and physical disabilities. Deputy Von Spiegel further testified that appellant admitted to touching Angela.

**{13}** Deputy Von Spiegel obtained buccal swabs from appellant for DNA comparison and took appellant's clothing as evidence. These items were taken to the Canton Stark County Crime Laboratory.

**{14}** Criminalist Jennifer Creed examined the clothing and buccal swabs obtained from appellant and the rape kit obtained from Angela. From Angela's vaginal and perianal swabs, Ms. Creed was able to identify seminal fluid. However, Ms. Creed was unable to isolate a DNA profile from the seminal fluid. Angela's underwear contained a mixture of DNA from Angela and at least two other people, neither of which was appellant. Testimony revealed Angela's underwear was second-hand. Ms. Creed also examined appellant's boxer shorts. On the interior front of the shorts, Creed located a stain containing a prostate-specific antigen, which is a component of seminal fluid. When Ms. Creed performed DNA testing on the stain, she obtained a mixture of DNA from appellant and a female. The female DNA was Angela's.

**{15}** In February 2011, appellant was charged with three counts of rape and three counts of sexual battery. The case proceeded to a jury trial. After hearing all the evidence and deliberating, the jury convicted appellant of one count of rape and one count of sexual battery and acquitted him of the remaining charges.

**{16}** At a later sentencing hearing, the trial court merged the convictions as allied offenses of similar import under R.C. 2941.25(A), sentenced appellant ten years for rape and classified him as a Tier III sex offender.

**{17}** Appellant has timely appealed raising the following four Assignments of Error,

{18} "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{19} "II. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

{20} "III. APPELLANT WAS DENIED A FAIR TRIAL AS A RESULT OF PROSECUTORIAL MISCONDUCT.

{21} "IV. THE TRIAL COURT ABUSED ITS DISCRECTION [Sic.] WHEN IT DID NOT PERMIT CROSS EXAMINATION REGARDING A PRIOR FELONY CONVICTION."

I.

{22} In his First Assignment of Error appellant maintains that his convictions are against the sufficiency of the evidence and against the manifest weight of the evidence. We disagree.

{23} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.;* see also *McDaniel v. Brown*, —— U.S. ——, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017 at ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68 (5th Dist.).

**{24}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721( 1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

**{25}** In the case at bar, appellant was found guilty of one count of rape in violation of R.C. 2907.02(A)(1)(c), which required that appellant knew the victim's capability was substantially impaired. More particularly, R.C. 2907.02 states:

**{26}** "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

**{27}** "* * *

{28} "(c) The other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."

{29} In order to convict appellant of Rape, the state had to prove appellant engaged in sexual conduct with Angela. "Sexual conduct" is defined to include "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{30} "Corroboration of victim testimony in rape cases is not required. See *State v. Sklenar* (1991), 71 Ohio App.3d 444, 447, 594 N.E.2d 88; *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346; *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854; *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 455 N.E.2d 1066." *State v. Johnson,* 112 Ohio St .3d 210, 217, 2006-Ohio-6404, 855 N.E.2d 1144, ¶ 53.

{31} Appellant was also found guilty of sexual battery pursuant to R.C. 2907.03(A)(5), which provides in relevant part,

{32} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

{33} "* * *

**{34}** "(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.

**{35}** "* * *"

**{36}** To support his argument that his convictions are premised upon insufficient evidence and are against the manifest weight of the evidence, appellant provides three arguments.

**{37}** Appellant argues first that there was no eyewitness testimony given that he and Angela Richards were engaged in sexual conduct. Next, appellant contends that there was no DNA evidence presented that would link him to having engaged in sexual conduct with Angela. Finally, appellant maintains that he denied any sexual activity with Angela Richards when he met with Detective John Von Spiegel of the Stark County Sheriff's Office.

**{38}** Josephine testified that she walked in on her half-dressed husband and daughter lying in the same bed and when caught, appellant attempted to cover up the fact that he had an erection. Moreover, Angela told nurse McCune that appellant had put his penis in her vagina. Angela herself was also very clear on this fact at trial.

**{39}** Next, appellant complains that there was no DNA evidence presented to prove he engaged in sexual conduct with Angela. Although criminalist Creed was unable to isolate a DNA profile from Angela's vaginal and perianal swabs, Ms. Creed was able to chemically identify seminal fluid, a body fluid that women do not produce. Further, the seminal fluid stain on the inside of appellant's shorts was a mixture of DNA — his own and Angela's.

**{40}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found the essential elements of the crime of rape and the crime of sexual battery beyond a reasonable doubt.

**{41}** We hold, therefore, that the State met its burden of production regarding each element of the crime of rape and sexual battery and, accordingly, there was sufficient evidence to support appellant's convictions.

**{42}** "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir.1973) (emphasis added), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer*, 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267(1997).

**{43}** Although appellant cross-examined the witnesses and argued that he did not have sexual conduct with Angela, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990), *certiorari denied*, *Jamison v. Ohio,* 498 U.S. 881, 111 S.Ct. 228, 112 L.Ed.2d 182(1990).

**{44}** The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the

evidence." *State v. Craig*, 10th Dist. 99AP-739, 2000 WL 297252(Mar 23, 2000) *citing State v. Nivens,* 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. No. 02AP-604, 2003- Ohio-958, 2003 WL 723225, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548(1964); *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889, 2003 WL 21291042, *citing State v. Caldwell*, 79 Ohio App. 3d 667, 607 N.E.2d 1096( 4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 (1991), *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668(1997).

**{45}** After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.

**{46}** Accordingly, appellant's convictions for rape and sexual battery are not against the manifest weight of the evidence.

**{47}** Appellant's First Assignment of Error is overruled.

III.

**{48}** Appellant's Second and Third Assignments of Error address interrelated concepts; therefore for continuity and ease of discussion we shall address appellant's Third Assignment of Error out-of-order.

**{49}** Appellant contends that prosecutorial misconduct resulted in reversible error. Specifically, appellant contends testimony elicited by the state from Josephine and Marcus regarding their belief that appellant had victimized Angela prior to January 17, 2011 and the prosecutor's reference to their testimony in closing argument were error. He further argues that the state improperly bolstered witness credibility and misstated what the forensic evidence showed in closing argument.

**{50}** During opening statement, counsel is accorded latitude and allowed fair comment on the facts to be presented at trial. See *Maggio v. Cleveland*, 151 Ohio St. 136, 84 N.E.2d 912 (1949), paragraph two of the syllabus. See, also, *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 126*. State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio 6235, 818 N.E.2d 229, ¶ 157. In addition, a prosecutor is entitled to a certain degree of latitude in closing arguments. *State v. Liberatore*, 69 Ohio St. 2d 583, 589, 433 N.E.2d 561(1982). Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. *State v. Maurer*, 15 Ohio St. 3d 239, 269, 473 N.E.2d 768(1984). A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge,* 75 Ohio St.3d 136, 141, 1996-Ohio-227, 661 N.E.2d 1019. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431(1974).

**{51}** The Ohio Supreme Court has overruled a prosecutorial misconduct argument because the evidence of the defendant's guilt was overwhelming. See *State v. Hand,* 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶116, *citing State v.*

*Rahman*, 23 Ohio St.3d 146, 154-155, 492 N.E.2d 401(1986). Accordingly, based upon appellant's failure to object to the statements and bring the issue to the trial court's attention for consideration, we must address this assignment under the plain error doctrine.

**{52}** In criminal cases, plain error is governed by Crim. R. 52(B), which states:

**{53}** "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error "does not constitute a plain error ... unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph two of the syllabus.

The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano* (1993), 507 U.S. 725,734, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993); *State v. Perry* (2004), 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶14. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to 'prevent a manifest miscarriage of justice.' " *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240(2002), quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804(1978), paragraph three of the syllabus. *Perry*, supra, at ¶14, 802 N.E.2d 643.

**{54}** The Supreme Court has repeatedly admonished that this exception to the general rule is to be invoked reluctantly. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent

a manifest miscarriage of justice." *Perry*, supra, at ¶14, 802 N.E.2d 643. *See, also, State v. Thompson*, 33 Ohio St.3d 1, 10, 528 N.E.2d 542(1987); *State v. Williford* (1990), 49 Ohio St.3d 247, 253, 551 N.E.2d 1279(1990) (Resnick, J., dissenting).

**{55}** Comments made to incite fear, prejudice and/or passion in the jury require reversal. *Viereck v. United States*, 318 U.S. 236, 247, 63 S.Ct. 561, 87 L.Ed 734(1943); *State v. Williams*, 23 Ohio St.3d 16, 20, 490 N.E.2d 906(1986). We find the statements cited by appellant in support of his argument do not rise to the level of inciting fear, prejudice and/or passion. The state simply did not present any misleading information.

**{56}** "The prosecutors' argument did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused such as the right to counsel or the right to remain silent…." *Darden v. Wainwright*, 477 U.S. 168, 181-182, 106 S.Ct. 2624, 91 L.Ed.2d 144(1986).

**{57}** Extrinsic acts may not typically be used to suggest that the accused has the propensity to act in a certain manner. Evid.R. 404; *State v. Smith*, 49 Ohio St.3d 137, 140, 551 N.E.2d 190(1990). However, there are exceptions. Evid.R. 404(B) allows such evidence where it is offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Additionally, R.C. 2945.59 provides, "In any criminal case in which the defendant's motive or intent * * * is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or

subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

**{58}** If a court finds that evidence was inadmissible under Evid. R. 404(B), the court can still determine that the error was harmless. The Supreme Court of Ohio has held that error is harmless if "there is no reasonable possibility that the evidence may have contributed to the accuser's conviction." *State v. Drew,* 10th Dist. No. 07AP-467, 2008-Ohio-2797, ¶31, quoting *State v. Bayless*, 48 Ohio St.2d 73, 357 N.E.2d 1035(1976), paragraph seven of the syllabus. Moreover, it is appropriate to find error harmless where there is "either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction." *State v. Ferguson*, 5 Ohio St.3d 160, 166, n. 5, 450 N.E.2d 265(1983). "When considering whether error is harmless, our judgment is based on our own reading of the record and on what we determine is the probable impact the statement had on the jury." *State v. Drew, supra, citing* See *State v. Kidder*, 32 Ohio St.3d 279, 284, 513 N.E.2d 311(1987).

**{59}** In the case at bar, the dates of the prior occurrences were generally alleged to be from 2008 through 2011. (2T. at 81-82).

**{60}** We find that even if this evidence was unfairly inadmissible, the error was harmless. As previously stated, the admission of prior bad acts is deemed harmless unless there is some reasonable probability the evidence contributed to the accused's conviction, *City of Columbus v. Taylor*, 39 Ohio St.3d 162, 529 N.E.2d 1382(1988). Appellant cannot demonstrate prejudice concerning testimony elicited by the state regarding allegation of sexual abuse prior to January 17, 2011 because he was

acquitted of those counts of the indictment. He therefore has not demonstrated plain error.

**{61}** Next, appellant argues that the state vouched for Josephine and Angela's credibility during closing argument and further allegedly incorrectly stated that appellant's semen was found inside Angela.

**{62}** In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144(1986).

**{63}** Appellant did not object to some of the comments to which he now claims error. Therefore, for those instances, we must find plain error in order to reverse.

**{64}** A prosecutor is entitled to a certain degree of latitude in closing arguments. *State v. Liberatore*, 69 Ohio St.2d 583, 589, 433 N.E.2d 561(1982). Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. *State v. Maurer*, 15 Ohio St.3d 239, 269, 473 N.E.2d 768(1984). A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. *State v. Benge,* 75 Ohio St.3d 136, 141, 1996-Ohio-227, 661 N.E.2d 1019. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431(1974).

**{65}** This Court has observed,

> In opening the closing argument, the prosecutor is limited to comments upon the evidence, and the logical and appropriate conclusions

to be drawn therefrom. Thus, he can bolster his own witnesses, and conclude by saying, in effect, 'The evidence supports the conclusion that these witnesses are telling the truth.' He cannot say, 'I believe these witnesses,' because such argument invades the province of the jury, and invites the jury to decide the case based upon the credibility and status of the prosecutor. See *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 470 N.E.2d 883. In a sense, such argument by the prosecutor injects himself into the trial as a thirteenth juror, and claims to himself the first vote in the jury room. Further, it is inappropriate for the prosecutor to vouch for the integrity of his witnesses. *Id.*

As to the defense witnesses, including the defendant, the prosecutor may comment upon the testimony, and suggest the conclusions to be drawn therefrom. He can say, 'The evidence supports the conclusion that the defendant is lying, is not telling the truth, is scheming, has ulterior motives, including his own hide, for not telling the truth.' See *State v. Strobel* (1988), 51 Ohio App.3d 31, 554 N.E.2d 916. He may not say, 'I believe the defendant is lying,' for the same reasons as above. *State v. Draughn*, 76 Ohio App.3d 666, 670, 602 N.E.2d 790(5th Dist. 1992).

{66} During closing argument, the prosecutor stated that Josephine's reactions and swearing underscored the credibility of her testimony. The prosecutor also referred to the fact that Angela made statements to law enforcement on two separate occasions and the nurse at the hospital to bolster her credibility.

**{67}** This Court has further noted,

In his rebuttal argument, the prosecutor may argue that the evidence does not support the conclusion postulated by defense counsel. He may comment upon the circumstances of witnesses in their testimony, including their interest in the case, their demeanor, their peculiar opportunity to review the facts, their general intelligence, and their level of awareness as to what is going on. He may conclude by arguing that these circumstances make the witnesses more or less believable and deserving of more or less weight.

Generally, the credibility of various witnesses will now have been put in issue by the argument of the defense. Considerable additional latitude is due the prosecutor at this juncture, either on fair play grounds or because the comments are invited by the defense. The prosecutor should be allowed to go as far as defense counsel. Thus, if the defense accuses witnesses of lying, the prosecutor should have the same right.

However, the prosecutor may not invite the jury to judge the case upon standards or grounds other than the evidence and law of the case. Thus, he cannot inflame the passion and prejudice of the jury by appealing to community abhorrence or expectations with respect to crime in general, or crime of the specific type involved in the case. *United States v. Solivan* (6th Cir. 1991), 937 F.2d 1146". Id. at 670-71, 602 N.E.2d at 793. *State v. Draughn, supra* 76 Ohio App. 3d at 670, 602 N.E.2d 790.

**{68}** In the case at bar, the comments by the prosecutor were invited by the defense and the defense's characterization of Josephine and Angela's testimony. The defense portrayed Josephine as unworthy of belief and suggested Angela could be easily confused.

**{69}** Based upon the evidence presented at trial, we find appellant is unable to establish the outcome of his trial would have been different but for the prosecutor's closing remarks.

**{70}** Finally, appellant contends that the prosecutor incorrectly stated that appellant's semen was found in Angela Richards.

**{71}** However, evidence was presented that criminalist Creed was able to chemically identify seminal fluid, a body fluid that women do not produce. Further, the seminal fluid stain on the inside of appellant's shorts was a mixture of his own and Angela's.

**{72}** We find no error plain or otherwise. No misconduct occurred because of the prosecutor's comments. Under these circumstances, there is nothing in the record to show that the jury would have found the appellant not guilty had the comments concerning semen, as opposed to seminal fluid and DNA, not been made on the part of the prosecution. *State v. Benge,* 75 Ohio St.3d 136, 141, 1996-Ohio-227, 661 N.E.2d 227.

**{73}** Appellant's Third Assignment of Error is overruled.

II.

**{74}** In his Second Assignment of Error appellant maintains he received ineffective assistance of counsel. We disagree.

**{75}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{76}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet *both* the deficient performance and prejudice prongs of *Strickland* and *Bradley*. *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009).

**{77}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

> Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts

or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

{78}    In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

{79}    Appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland*, 466 U.S. at 691, 104 S.Ct. 2066 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

{80} Appellant maintains that he received ineffective assistance of counsel when counsel failed to object to testimony from Josephine and Marcus regarding their belief that appellant had victimized Angela prior to January 17, 2011 and the prosecutor's reference to their testimony in closing argument. He further argues that his counsel failed to object to the state's allegedly improper bolstering of witness credibility and alleged misstatement of forensic evidence in closing argument.[1]

{81} "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears* (1999), 86 Ohio St.3d 329, 347, 715 N.E.2d 136, quoting *State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831.

{82} In *Yarborough v. Gentry* (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1, the Supreme court noted,

> When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052 (counsel is 'strongly presumed' to make decisions in the exercise of professional judgment). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.

---

[1] The argument that the prosecutor engaged in misconduct was discussed and rejected in our disposition of appellant's Third Assignment of Error which we previously addressed out-of order.

See *Bell, supra*, at 702, 122 S.Ct. 1843; *Kimmelman v. Morrison,* 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *Strickland*, *supra*, at 689, 104 S.Ct. 2052; *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

**{83}** In the case at bar, we have previously found the conduct of the prosecutor did not deny appellant a fair trial. None of the instances of ineffective assistance raised by appellant in the case at bar rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of him. The result of the process was not unreliable nor was the proceedings fundamentally unfair because of the performance of defense counsel. Appellant has failed to demonstrate that there exists a reasonable probability that the outcome would have been different. *Bradley*, supra at paragraph three of the syllabus.

**{84}** Appellant's Third Assignment of Error is overruled.

IV.

**{85}** In his final assignment of error, appellant argues that the trial court abused its discretion when it prevented him from cross-examining Josephine regarding a 1996 trafficking conviction.

**{86}** Evid.R. 609 governs the admission of prior convictions to impeach the credibility of a witness. Subject to the threshold test of relevancy under Evid.R. 403, Evid.R. 609 provides that evidence of prior convictions is "admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under

which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 609(B) states that such evidence is inadmissible if a period of more than ten years has elapsed, "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Further, evidence of a prior conviction more than ten years old "is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."

{87} In the case at bar, appellant requested the trial court permit him to inquire about Josephine's 1996 trafficking charge. However, appellant did not provide the state with written notice in advance of his intent to question Josephine about the prior conviction. Additionally, counsel stated he desired to use the conviction based solely on his own assessment that "someone who is highly addicted to crack cocaine * * *, also cheats, steals and lies." When asked by the trial court what evidence he had to indicate that Josephine was addicted to crack cocaine, counsel answered, "I just wanted to raise it." (1T. at 121-122).

{88} The trial judge possesses broad discretion under Evid.R. 609 to determine the admissibility of prior convictions for impeachment purposes. *State v. Wright*, 48 Ohio St.3d 5, 548 N.E.2d 923(1990); *State v. Goney* 87 Ohio App.3d 497, 501, 622 N.E.2d 688(2d Dist.1993). Under the circumstances presented in this case, we do not find that the trial court abused its discretion in refusing to admit evidence of the witness's prior conviction for impeachment purposes.

**{89}** Appellant's Fourth Assignment of Error is overruled.

**{90}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

WSG:clw 0214

_____
HON. JULIE A. EDWARDS

[Cite as *State v. Fether*, 2012-Ohio-892.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JOHN WAYNE FETHER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-00148 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JULIE A. EDWARDS