[Cite as *State v. Krause*, 2017-Ohio-7952.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-068** |
| RICHARD A. KRAUSE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Willoughby Municipal Court, Case No. 15 CRB 01044A&B.

Judgment: Affirmed.

*Judson J. Hawkins*, City of Eastlake Prosecutor, 37811 Lake Shore Boulevard, Eastlake, OH 44095 (For Plaintiff-Appellee).

Matthew *C. Bangerter*, P.O. Box 148, Mentor, OH 44061 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Richard A. Krause, appeals from the June 9, 2016 sentencing entry of the Willoughby Municipal Court. For the following reasons, the judgment of the trial court is affirmed.

**Procedural History**

{¶2} On April 6, 2015, appellant was charged with two counts of Assault, first-degree misdemeanors in violation of Section 537.03(a) of the Codified Ordinances of the City of Eastlake, Ohio.

{¶3} Appellant entered pleas of not guilty, and the case was set for a jury trial. Prior to trial, appellant filed a notice of alibi, stating he was at the home of Maria Crowe in Willowick, Ohio, at the time of the incident in question.

{¶4} A jury trial commenced on July 17, 2015. The main issue before the jury was one of identity, as appellant denied he was present at the scene of the offenses. At the close of the state's evidence, defense counsel moved for a Crim.R. 29 acquittal, which the trial court denied. The jury returned its guilty verdicts the same day.

**Post-trial Proceedings**

{¶5} On August 12, 2015, appellant filed a motion for new trial pursuant to Crim.R. 33. Appellee filed a brief in opposition. On September 11, 2015, appellant filed a supplement to his motion for new trial, and appellee filed a supplemental brief in opposition. At a hearing on the motion, appellant withdrew the arguments in the August 12, 2015 motion and proceeded only on the September 11, 2015 supplemental motion. The trial court overruled the September 11, 2015 motion on October 2, 2015.

{¶6} On October 13, 2015, appellant filed another motion for new trial pursuant to Crim.R. 33. An evidentiary hearing was held on this motion February 1, 2016.

{¶7} On March 14, 2016, appellee filed a motion to re-open the February 1, 2016 evidentiary hearing due to charges brought against Clarice Ward and William Riddle subsequent to the hearing. Ms. Ward, who had testified for the defense at trial and at the February 1, 2016 hearing, was arrested on two counts of perjury. The state alleged that Ms. Ward gave false testimony at trial and at the February 1, 2016 hearing. Mr. Riddle was arrested for intimidation of a witness. The complaint alleged he threatened Tonya Erzen in an attempt to influence or hinder her testimony for the

2

prosecution. The motion to re-open was granted, and an additional hearing on the October 13, 2015 motion for new trial was held on May 23, 2016.

{¶8} On June 6, 2016, the trial court overruled appellant's October 13, 2015 motion for new trial.

{¶9} On June 9, 2016, appellant was sentenced to 180 days in jail with 90 days suspended for each of the two counts of Assault, to be served concurrently. He was also ordered to pay a fine of $100 for each count, plus costs.

{¶10} Appellant filed a timely notice of appeal on June 23, 2016.

**Facts Adduced at Trial**

{¶11} Testimony at the trial included the following:

{¶12} At around 10:30 p.m. on the evening of April 3, 2015, Janna Karlovec and her boyfriend, Donald Ullman, went to a few bars in Eastlake, Ohio. Initially, they met up with Janna's son, Jeremy Karlovec, and his friend, Tonya Erzen, and had a few drinks at Bonkers. After Bonkers, the group went to Eastlake Tavern. From there, they proceeded to Final Score.

{¶13} Janna Karlovec testified she had a couple of drinks at each of the three bars she and the group visited. Janna further testified that she, Donald, Jeremy, and Tonya arrived at Final Score around 1:00 a.m. on April 4, 2015. She stated the group sat at the bar at Final Score, which is close to the front door; the bar was well lit. Janna noticed appellant when he first walked into the bar with a woman. She had seen appellant at a bar one year prior and thought he resembled her estranged husband. When appellant walked into the bar, Janna felt like he was "glaring" at their group. Appellant and the woman accompanying him sat about four or five bar stools away from

3

her, and Janna testified appellant continued to glare at her group. Prior to the assault, appellant walked past the group to go outside to smoke. When he came back in, Janna testified appellant punched Donald in the head. He next punched and kneed Janna in the head. Janna testified appellant was in close proximity to her while he was hitting her. She identified appellant as her assailant in open court.

{¶14} Tonya Erzen testified she was present at Final Score at the time Donald and Janna were assaulted, and she witnessed the assaults. Tonya testified she was familiar with appellant and the woman accompanying him at Final Score; she had previously seen them together on several occasions at different bars but did not know their names. Tonya stated that, after the assaults, she learned the names of appellant and the woman through Julie Yager, who was also at the bar that night. Upon learning the woman was Dawn Rinella, Tonya pulled up Dawn's Facebook profile on her phone. The Facebook page showed a picture of appellant and Dawn. When asked whether Rick Krause was present in the courtroom, Tonya stated, "it's not the same guy that I seen." Upon being shown a Facebook photo of Rick Krause, Tonya stated the man in the photo was Rick Krause. She stated that she was nervous. Tonya testified that the man in the Facebook photo was the man who assaulted Donald.

{¶15} Donald Ullman testified he was at Final Score on April 4, 2015. Final Score was not very bright, but the lighting was sufficient to distinguish colors and facial features. He testified he had five or six beers throughout the evening but was not intoxicated. He also testified that, like Janna, appellant came to his attention prior to the assault, because Donald also felt appellant was glaring at their group while sitting four or five bar stools away. Donald testified he felt like someone was looking at him, and

4

when he looked over at appellant, he saw that appellant was glaring. He testified that when he was hit in the head, he did not see the assailant because he was immediately knocked unconscious and fell from his bar stool. Donald testified that when Tonya pulled up Dawn's Facebook profile on her phone, he identified the man in her Facebook photo as the same man who was glaring at him in the bar. Donald identified appellant as his assailant in open court.

{¶16} Jeremy Karlovec testified he was at Final Score around 1:00 a.m. on April 4, 2015, with Donald, Tonya, and Janna, his mother. He testified the bar was sufficiently illuminated to distinguish facial features. Jeremy testified he had never seen appellant prior to April 4, 2015. Jeremy first noticed appellant that night with a "blond female" when he casually looked around the bar to "see who's there." Jeremy also noticed when appellant walked past their group and went outside to smoke a cigarette. He further testified that when appellant came back in, he "swung and hit Donald in the face, proceeded to my mother, hit her in the face and then proceeded to keep kneeing her." Jeremy was in close proximity when his mother and Donald were being hit. Jeremy testified appellant left the bar after he hit Janna. Jeremy called the police. He then testified that Tonya learned Dawn Rinella was the woman accompanying appellant that night. He stated that Tonya pulled up Dawn's Facebook profile on her phone, and he recognized the assailant as the man in Dawn's profile picture.

{¶17} Julie Yager testified that her best friend owns Final Score. Julie was at Final Score in the early morning of April 4, 2015. She was in the company of her friend, Ken Curtis, and was familiar with appellant and Dawn Rinella prior to April 4, 2015. Julie testified that Dawn and appellant were at Final Score on April 4, 2015. Julie stated

she witnessed the assaults that took place and that she saw appellant "walk into the bar, punch two people, and then walk out of the bar."

{¶18} Ken Curtis testified he was at Final Score with Julie Yager on April 4, 2015. He testified appellant was also at the bar that night. He further testified he did not witness the assaults that took place. When asked to identify Rick Krause in the courtroom, Ken initially identified a man who was not Rick Krause. He subsequently identified appellant as Rick Krause.

{¶19} Clarice Ward testified for the defense. She was working at Final Score as a bartender from around 7:00 p.m. on April 3, 2015, to the morning of April 4, 2015, when the bar closed. She testified it was dark in the bar that night and that she was familiar with Dawn Rinella and saw her at the bar that night. She testified appellant was not at Final Score between April 3, 2015, and April 4, 2015. Clarice also stated she did not see the confrontation that occurred at the bar. She further testified she remembered Janna, Donald, and Jeremy were at the bar, that she only served them one beer, and that they appeared intoxicated.

{¶20} At trial, Maria Crowe testified for the defense as an alibi witness. On direct examination, Maria testified she and appellant have been friends for over twenty years. She explained that on the night of April 3, 2015, appellant was visiting with her at her house in Willowick, Ohio. Maria's two teenage children and her six-month old grandson were also at the house. Maria testified appellant arrived at her house around 9:00 p.m. on August 3, 2015, and they "just sat around, talked, ate, played with the baby." She further testified that appellant spent the night at her house and did not leave

6

until April 4, 2015, at around 11:00 a.m. or 12:00 p.m.  She stated appellant is not a cigarette smoker.

{¶21} On cross-examination of Maria, the prosecutor presented her with a screenshot of her Facebook account, and Maria identified it as such.  It showed that on April 3, 2015, she posted "Final Score" to her Facebook account and several of her friends had commented on the post.  The following comments were left under Maria's post and referenced by the prosecutor:

[Comment 1]: Drink one for me!!!

[Comment 2]: S**thole.

[Comment 3]: Lmfao ^^^ true statement

[Comment 4]: Agreed

{¶22} After the prosecutor questioned Ms. Crowe about the comments, the following exchange took place:

**Prosecutor:** So on April 3rd when you say that the Defendant was with you all evening, you're on Facebook talking about the Final Score?

**Ms. Crowe:** That's correct.  It says, 'Final Score.'  It does not say I was there.

**Prosecutor:** I didn't say you were there.  But it says, 'Final Score'?

**Ms. Crowe:** Yes, it does.

{¶23} Neil Helmick also testified for the defense.  He claimed he was at Final Score by himself after midnight on April 4, 2015.  Neil testified he knows Dawn and Clarice, and they were also at the bar.  He testified he knows appellant, but on April 4, 2015, he did not see appellant or anyone who looked like appellant at Final Score.  Neil

7

further testified that as he was getting ready to leave the bar, a "scuffle" occurred toward the front of the bar. He denied seeing exactly what happened.

**{¶24}** During his closing argument, the prosecutor referenced Maria's Facebook account. He alleged Maria's post of "Final Score" on her Facebook account and the comments following it suggested Maria was not at home with appellant on the night of April 3, 2015, but was at Final Score with appellant and left before police arrived. Although defense counsel had not objected to the exhibit during the prosecutor's cross-examination of Maria, defense counsel requested a bench conference when the prosecutor began to reference the exhibit in his closing argument. The bench conference was not transcribed due to an inaudible recording.

## Manifest Weight & Sufficiency of the Evidence

**{¶25}** Appellant's fourth and fifth assignments of error present issues relating to the sufficiency and weight of the evidence presented by the state:

> [4.] The trial court erred to the prejudice of the Defendant-Appellant when it returned a verdict of guilty against the manifest weight of the evidence.

> [5.] The trial court erred to the prejudice of the Defendant-Appellant in denying his Motion for Acquittal made pursuant to Crim.R. 29(A).

**{¶26}** In his fourth assignment of error, appellant maintains his convictions are against the manifest weight of the evidence, arguing "there is remarkable disagreement about the identity of the assailant[.]"

**{¶27}** To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must weigh the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must

8

be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶28}** We are mindful that the jury, as the trier of fact, is entitled to believe all, part, or none of a witness's testimony. *State v. Williams*, 11th Dist. Lake No. 2012-L-078, 2013-Ohio-2040, ¶21 (citation omitted). "The trier of fact is in the best position to evaluate inconsistencies in testimony by observing the witness's manner and demeanor on the witness stand—attributes impossible to glean through a printed record." *Id.* (citation omitted). "This court [is] not in a position to view the witnesses who testified below and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony." *State v. Long*, 127 Ohio App.3d 328, 335 (4th Dist.1998) (citations omitted). Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the factfinder's determinations of credibility. *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, ¶30; *see also State v. Barnes*, 11th Dist. Portage No. 2012-P-0133, 2013-Ohio-2836, ¶46.

**{¶29}** In considering the foregoing testimony presented at trial, the jury was permitted to determine the credibility of the witnesses. In addition to direct evidence, there was considerable evidence before the jury that would allow it to make reasonable inferences from the facts to find that appellant was the man who assaulted Donald Ullman and Janna Karlovec. We cannot conclude the jury lost its way. Therefore, we find appellant's convictions are not against the manifest weight of the evidence.

**{¶30}** Appellant's fourth assignment of error is without merit.

{¶31} In his fifth assignment of error, appellant argues his Crim.R. 29 motion for acquittal should have been granted because the state failed to present sufficient evidence to establish beyond a reasonable doubt that appellant was the assailant who committed the offenses charged.

{¶32} Crim.R. 29(A) provides, in pertinent part: "[t]he court * * * shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle*, 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶25 (citations omitted). "In essence, sufficiency is a test of adequacy." *Thompkins*, *supra*, at 386 (1997). "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). *See also State v. Hall*, 11th Dist. Trumbull No. 2011-T-0115, 2012-Ohio-4336, ¶7.

{¶33} Appellant was convicted of two counts of Assault, in violation of Section 537.03(a) of the Codified Ordinances of the City of Eastlake. That section states: "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."

{¶34} A sufficiency argument has no merit where the verdict is not against the manifest weight of the evidence. *See State v. Honzu*, 11th Dist. Trumbull No. 2016-T-0056, 2017-Ohio-626, ¶27, quoting *Patterson v. Godale*, 11th Dist. Lake Nos. 2014-L-

10

034 & 2014-L-042, 2014-Ohio-5615, ¶23, citing *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32. Therefore, we find the trial court did not err in denying appellant's Crim.R. 29 motion.

{¶35} Appellant's fifth assignment of error is without merit.

## Prosecutorial Misconduct

{¶36} Appellant's first assignment of error states:

{¶37} "The trial court erred to the prejudice of the defendant-appellant by allowing the state to improperly comment on the credibility of witnesses."

{¶38} Appellant argues the prosecutor engaged in misconduct during closing arguments by expressing a personal belief about the credibility of two of the state's witnesses. Appellant maintains the statements prejudicially affected his substantial rights.

{¶39} "The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. * * * It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury." *State v. Smith*, 14 Ohio St.3d 13, 13-14 (1984), citing *State v. Woodards*, 6 Ohio St.2d 14, 26 (1966), *State v. Liberatore*, 69 Ohio St.2d 583, 589 (1982), and *United States v. Dorr*, 636 F.2d 117 (5th Cir.1981).

> [T]he prosecution must avoid insinuations and assertions which are calculated to mislead the jury. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. Moreover, * * * an attorney is not to allude to matters which will not be supported by admissible evidence, and '* * * [a] lawyer should not make unfair or derogatory personal reference to opposing counsel.'

*Id.* at 14 (internal citations omitted), quoting the Code of Professional Responsibility.

11

**{¶40}** "The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." *Id.* (citation omitted). "In making a determination of whether the remarks were prejudicial, an appellate court must consider all relevant factors, including: (1) the nature of the closing remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Moore*, 97 Ohio App.3d 137, 143 (11th Dist.1994), citing *State v. Clark*, 40 Ohio App.2d 365 (8th Dist.1974), and *State v. Owens*, 11th Dist. Lake No. 89-L-14-047, 1990 WL 174128, *1 (Nov. 9, 1990).

**{¶41}** In his closing argument, the prosecutor made the following statements about the credibility of two of the state's witnesses:

> You have Donald Ullman recognized [appellant], and Don's not lying because all – he didn't say he saw the Defendant hit him, he just said he saw the Defendant earlier. He didn't know who hit him. He was knocked unconscious * * *. Jeremy, who may be different, but he's not a liar and he was quite certain, again he was in the proximity of the Defendant, had looked around and seen him[.]

**{¶42}** Assuming these comments were improper, merely for the sake of argument, appellant's substantial rights were not prejudicially affected by the comments. Although defense counsel did not object, the trial court gave a general jury instruction on witness credibility. The trial court stated: "As jurors you have the sole and exclusive duty to decide the credibility of the witnesses who will testify in this case, which simply means it is you who must decide whether to believe or disbelieve a particular witness and how much weight, if any, to give to the testimony of each witness." The trial court also instructed the jury that "you must not consider as evidence any statement by any

12

attorney made during trial." Given the strength of the evidence and the curative instructions, we do not find the comments were prejudicial.

{¶43} As a second issue under this assignment of error, appellant argues he was prejudiced by his trial counsel's failure to object to the prosecutor's statements during closing argument.

{¶44} In evaluating ineffective assistance of counsel claims, Ohio appellate courts apply the two-part test enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, it must be determined that counsel's performance fell below an objective standard of reasonableness. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Second, it must be shown that prejudice resulted from counsel's performance. *Id.* An appellate court need not analyze both prongs of the *Strickland* test if it finds appellant failed to prove either prong. *Id.* at 143, citing *Strickland*, *supra*, at 697.

{¶45} Here, we have determined the prosecutor's comments were not prejudicial. Therefore, appellant has failed to meet the second prong of the *Strickland* test.

{¶46} Appellant's first assignment of error is without merit.

**Evidentiary Issues**

{¶47} Appellant's second assignment of error contains four issues for review, three of which pertain to the testimony of Maria Crowe. The assignment of error states:

{¶48} "The trial court erred to the prejudice of the defendant-appellant by allowing the state to introduce evidence not provided to the defendant."

13

**{¶49}** As his first issue under this assignment of error, appellant maintains the extrinsic evidence introduced to impeach Maria Crowe on cross-examination was incomplete and was not provided to defense counsel prior to being used. Appellant argues the trial court should have excluded the extrinsic evidence.

**{¶50}** Defense counsel did not object to the use of the extrinsic evidence. Accordingly, appellant has forfeited all but plain error review on appeal. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶21, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶15.

**{¶51}** Pursuant to Crim.R. 52(B), to support a finding of plain error there must be: (1) an error, i.e., a deviation from a legal rule; (2) the error must be plain, i.e., an obvious defect in the trial proceedings; and (3) the error must have affected substantial rights, i.e., affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002) (citations omitted).

**{¶52}** Without an objection, it is unclear how the trial court could have known the evidence used by the prosecutor to impeach Maria was incomplete and had not been provided to the defense in order for the trial court to determine whether the exhibit should be excluded. In fact, based on the record before us, it is not established that the evidence was improper. Therefore, we find no plain error in the trial court's failure to exclude the evidence.

**{¶53}** Appellant next claims the comments from Maria's friends on her Facebook account constituted inadmissible hearsay. Appellant maintains the Facebook comments introduced by the state were written, out-of-court assertions, offered for the truth of the matter asserted, which was that Maria was present at Final Score on the

night of April 3, 2015. In response, appellee argues the Facebook comments were not assertions prohibited by the hearsay rule.

{¶54} We review appellant's argument for plain error as defense counsel made no objection to the introduction of the Facebook comments at trial. *See Rogers*, *supra*, at ¶21*.*

{¶55} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). A statement can be either an oral or a written assertion. Evid.R. 801(A). Under Evid.R. 802, "[h]earsay is not admissible except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."

{¶56} The comments from Maria's Facebook account were not hearsay. The comments were mostly the writers' opinions of Final Score. The comments themselves did not assert Maria was at Final Score. Instead, the prosecutor used the Facebook comments to support an inference that Maria would not have been discussing Final Score with people on Facebook if she was not at the bar. The comments were not being offered to prove the truth of the matter asserted. They were not, for example, offered to prove the truth that the bar was a "s**thole." Because the comments were not hearsay, it was not error for the trial court to admit them.

{¶57} We find no plain error.

15

**{¶58}** Appellant further argues his trial counsel was ineffective for failing to object to the admission of the Facebook comments because they were hearsay.

**{¶59}** Because we have determined the Facebook comments were not hearsay and that it was not error for the trial court to admit the comments into evidence, defense counsel's performance did not fall below an objective standard of reasonableness when he failed to object to the admission of the comments. Therefore, appellant failed to meet the first prong of the *Strickland* test.

**{¶60}** The foregoing three issues discussed under appellant's second assignment of error are not well taken.

**Post-conviction Motions**

**{¶61}** The final issue under appellant's second assignment of error pertains to the trial court's denial of his September 11, 2015 supplemental motion for new trial.

**{¶62}** In his motion, appellant asserted newly discovered evidence, prosecutorial misconduct, and accident or surprise as his grounds for relief. Appellant argued the Facebook exhibit used by the prosecutor to impeach Maria Crowe was incomplete, as it did not include all the comments following Maria's Facebook post. Appellant maintained the complete exhibit constituted newly discovered evidence once it was discovered by the defense. Appellant also argued the prosecutor's failure to provide defense counsel with the entire exhibit constituted prosecutorial misconduct. He asserted the undisclosed comments were material to a finding of guilt because some of the comments that were not included with the exhibit indicated Maria did not go to Final Score on the night of April 3, 2015, thereby supporting appellant's alibi defense. Appellant further argued the exhibit was a surprise, because defense counsel had no

16

opportunity to review the exhibit in order to properly prepare the defense and trial strategy.

{¶63} Crim.R. 33(A) provides, in pertinent part:

A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

* * *

(2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;

(3) Accident or surprise which ordinary prudence could not have guarded against;

* * *

(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial.

'To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.'

{¶64} *Hawkins*, *supra*, at 350, quoting *State v. Petro*, 148 Ohio St. 505 (1947), syllabus (citation omitted).

{¶65} A trial court's application of this test is reviewed under an abuse of discretion standard. *State v. Hoffman*, 11th Dist. Lake No. 2001-L-022, 2002-Ohio-6576, ¶18, citing *State v. Johnston*, 39 Ohio St.3d 48, 60 (1988). "However, in cases where the newly discovered evidence is claimed to have been suppressed, the reviewing court is to invoke a due process analysis as appellant's Fourteenth

17

Amendment right to a fair trial is at issue." *Id.*, citing *Johnston*, *supra*, at 60, citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Additionally, when a motion for new trial is based on "surprise," "the surprise of which the defendant complains must have materially affected the defendant's substantial rights." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 82.

**{¶66}** The following undisclosed Facebook comments made by Maria after she posted "Final Score" supported appellant's alibi defense:

> **April 3, 2015 at 8:35 p.m.** FYI. I didn't go bad atmosphere
>
> **April 3, 2015 at 9:24 p.m.** We didn't lose we won cause we didn't go there..

These comments were posted several hours prior to the incident and only indicate that Maria did not go to Final Score at that time. The trial court found the nondisclosure was not material to a finding of guilt because there was substantial evidence placing defendant at the crime location several hours after the last of the Facebook comments indicating Maria was not at Final Score. The state presented six witnesses during trial who placed appellant at Final Score at the time of the assault. Additionally, because Maria was a witness for the defense, the trial court found the defense had the opportunity to rehabilitate her after she was impeached. Furthermore, the comments do not make reference to appellant. The trial court determined the Facebook comments were cryptic and did not expressly state what either party claimed.

**{¶67}** The trial court did not abuse its discretion when it overruled the motion. The prosecutor's failure to disclose the complete exhibit did not materially affect appellant's substantial rights nor did it violate his due process rights. As stated by the trial court, Maria was a witness for the defense. Defense counsel had the opportunity to

rehabilitate her after she was impeached. Although defense counsel was unaware of the complete Facebook exhibit, Maria still could have been questioned about any inconsistencies with regard to the comments and her actual whereabouts on the night in question. Furthermore, Maria had access to her Facebook account and could have checked the comments.

**{¶68}** Appellant's argument is not well taken.

**{¶69}** Appellant's second assignment of error is wholly without merit.

**{¶70}** Appellant's third assignment of error pertains to the trial court's denial of his motion for new trial filed on October 13, 2015. The assignment of error states:

**{¶71}** "The trial court erred to the prejudice of the defendant-appellant by overruling the defendant's new motion for new trial."

**{¶72}** Appellant argues the trial court abused its discretion in overruling his October 13, 2015 motion for new trial. Appellant contends the trial court improperly determined the credibility of the witnesses who testified at the February 1, 2016 hearing. He maintains that after the trial court determined the new evidence could not have been discovered prior to trial with due diligence, a new trial should have been granted for a jury to evaluate the credibility of the witnesses.

**{¶73}** In considering a motion for new trial, the "trial judge [has] a right * * * to evaluate the credibility of the claimed newly discovered evidence." *State v. Lee*, 11th Dist. Lake No. 12-034, 1987 WL 17259, *2 (Sept. 18, 1987) (citation omitted). The present case is similar to cases in which a motion for new trial is filed on the grounds that a witness has recanted his or her testimony. In those cases, the trial court must determine whether the new statements of the recanting witness are more credible than

19

the trial testimony. *State v. Elkins*, 9th Dist. Summit No. 21380, 2003 WL 22015409, ¶15 (Aug. 27, 2003) (citations omitted). If the trial court determines the witnesses' new statements are more credible, only then must the trial court determine whether the statements would materially affect the outcome of the trial. *See id.* at ¶16 (citation omitted).

{¶74} In his motion, appellant maintained that a man named Rick Wohr contacted counsel, after learning appellant had been convicted for the assaults, and stated he was the individual involved in the altercation at Final Score on April 4, 2015. Appellant's motion included an unsworn statement from Mr. Wohr, in which Mr. Wohr stated he was the assailant at Final Score on April 4, 2015. Appellant later filed a supplemental affidavit from Mr. Wohr, in which Mr. Wohr provided a more complete explanation of the events that transpired on April 4, 2015. On October 26, 2015, the state filed a brief in opposition, arguing Mr. Wohr's testimony could have been discovered prior to trial with reasonable diligence. Appellant filed a second supplemental affidavit on October 27, 2015. This affidavit was from defense counsel, stating Mr. Wohr's identity would not have been discovered with reasonable diligence if Mr. Wohr had not come forward on his own.

{¶75} The trial court conducted a lengthy hearing on the motion on February 1, 2016. Mr. Wohr and other witnesses testified at the hearing.

{¶76} The state subsequently moved to reopen the hearing. The trial court granted the motion and held an additional hearing on May 23, 2016. At that hearing, Clarice Ward recanted her trial testimony that appellant was not at the bar between April 3, 2015, and April 4, 2015. Ms. Ward testified appellant was present at the bar and that

20

she served him. She testified that she lied at the jury trial because appellant asked her to say he was not there; she complied with his request because they were friends. Maria Crowe also recanted previous testimony in favor of appellant by admitting she went to bed around 11:00 p.m. on April 3, 2015, and did not know whether appellant left her house after that time. Also testifying was William Riddle, who had not testified at the trial. Mr. Riddle testified he was outside the bar when the assaults took place. He testified that about a week after the assaults, he asked appellant what had happened at the bar because he knew people had been "getting mouthy" with appellant and "messing with him." Mr. Riddle testified appellant indicated he "slapped them and they fell on the ground."

{¶77} In its judgment entry overruling appellant's motion, the trial court found the "ability of the Defendant to discover the testimony of Rick Wohr prior to trial was not practical, and therefore, that requirement of Crim.R. 33(A)(6) was met." However, after considering the testimony and credibility of the witnesses who testified at the hearing, the trial court determined the testimony provided in support of appellant's motion did not create a strong possibility of a different result at trial in part because Mr. Wohr's credibility was questionable. The trial court found that Mr. Wohr became "vocal, loud and defensive" when the prosecutor challenged the truth of his testimony on cross-examination. "Rather than simply responding to the Prosecutor's questions and admitting he committed the offense, Wohr responded in a manner that suggested he had a vested interest in the Court's conclusion as to whether he should be substituted as the perpetrator of the assaults." The court further found Mr. Wohr's credibility was

21

challenged by the reconfirmation of the identifying witnesses who had testified at trial and that the testimony of a new witness at the motion hearing impeached his credibility.

{¶78} Appellant's motion for new trial alleged the true perpetrator of the crime had come forward. Although the trial court found this new evidence could not have previously been discovered with due diligence, it was not required to grant a new trial based on that finding alone. Appellant was also required to show the new evidence disclosed a strong probability of changing the result if a new trial were granted. *See Hawkins*, *supra*, at 350. In order for the trial court to determine whether Mr. Wohr's testimony would materially affect the outcome if a new trial were granted, it was necessary for the trial court to determine the credibility of the new information.

{¶79} Accordingly, we find the trial court did not abuse its discretion in overruling appellant's motion for new trial.

{¶80} Appellant's third assignment of error is without merit.

{¶81} For the foregoing reasons, the judgment of the Willoughby Municipal Court is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.